UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ERNEST L. MOON, | ) | Case No.: 1:10 CV 1092 |
| Plaintiff | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| ALCOA, INC., | ) | |
| Defendant. | ) | <u>ORDER</u> |

Currently pending in the above-captioned case is Defendant Alcoa's ("Alcoa"), Motion for Summary Judgment. (ECF No. 17.) For the following reasons, the court grants the Motion.

### I. FACTUAL AND PROCEDURAL HISTORY

This case arises from Alcoa's decision to terminate the employment of Plaintiff Ernest L. Moon ("Moon"), and Moon's lawsuit against Alcoa for wrongful termination and employment discrimination. (ECF No. 1.) Alcoa is a producer of primary aluminum and fabricated aluminum. (ECF No. 17, Ex. 1.) The company operates aluminum processing facilities around the world; Moon worked at the Cleveland Works facility located in Cleveland, Ohio as a security sergeant. (*Id*.) As a security sergeant, Moon was responsible for controlling access to the facility, performing periodic security patrols, conducting security investigations, and directing the work of the security guards. (ECF No. 17, Ex 2.) At the time of his employment, the security guards and sergeants were members of the International Union of Security, Police, and Fire Professionals of America ("SPFPA"). (*Id*.) Alcoa and the SPFPA entered into a separate collective bargaining agreement ("the Agreement"), that governed the terms and conditions of employment for the security staff.

(*Id*.) The Agreement gave Alcoa the authority to terminate an individual's employment for "just cause." (*Id*.) In addition to the Agreement, a Code of Conduct ("the Code of Conduct"), governed Moon's employment and set forth standards for employee conduct, offenses, and penalties for violation of the Code. (ECF No. 17, Ex.12.)

Alcoa alleges that it terminated Moon's employment because Moon was convicted of attempted sexual imposition of a minor (ECF No. 17, Ex. 5 and 6), and attempted receipt of stolen property (ECF No. 17, Ex. 7.)

On September 12, 2008, the Maple Heights Police entered Alcoa's Cleveland Works facility and arrested Moon who had been charged with the crime of sexual imposition of a minor. (ECF No. 1.) In response to Moon's arrest, Alcoa investigated the criminal charges against Moon and placed him on a paid leave of absence. (ECF No. 1; ECF No. 17, Ex. 5 p. 28.) Alcoa suspended its investigation of Moon's criminal charges pending the result of Moon's criminal proceedings, and allowed Moon to return to work a week later. (*Id*.) On October 2, 2008, Moon pled no contest to the charge of attempted sexual imposition of a minor, a misdemeanor, and served 24 days in jail. (ECF No. 1; ECF No. 17, Ex. 5 p. 29.) As a result of his conviction, Moon was required to register with the Cuyahoga County Sex Offender Registry as a Tier I Child Offender. (ECF No. 17, Ex. 6.) While investigating Moon's charge for sexual imposition of a minor, Alcoa alleges that three months after it hired Moon, it discovered that he had been convicted of attempted receipt of stolen property in 2001. (ECF No. 17, Ex. 7.) The attempted receipt of stolen property occurred during Moon's employment as a security guard for Progressive Insurance. (ECF No. 1.) According to Moon, a Progressive Insurance employee found a small briefcase and turned it over to another security guard who gave the briefcase to Moon. (*Id*.) Moon then transferred the briefcase to his

- 2 -

supervisor. (*Id*.) When the owner received the briefcase he reported that some items were missing. (*Id*.) Moon was later charged and pled guilty to attempted receipt of stolen property. (*Id*.) As part of his sentence, the county court stated that the defendant could no longer work as a security guard. (ECF No. 17, Ex. 7.)

On November 5, 2008, Alcoa completed its investigation and terminated Moon's employment because his convictions were "inconsistent with the role and expectations of an Alcoa Security Officer." (ECF No. 17, Ex. 10.) On November 6, 2008, the SPFPA filed a labor grievance on Moon's behalf. (ECF No. 17, Ex. 11.) While Moon alleges that he does not know what became of his grievance, Alcoa claims that the grievance proceeded through the first two steps[1] of the Agreement's grievance procedure, and that the SPFPA did not request arbitration or continue with the grievance process. (ECF No. 17, Exs. 1, 11, and 15.)

On March 29, 2010, Moon filed this lawsuit in the Cuyahoga County Common Pleas Court. (ECF No. 1; Ex. A.) Alcoa removed this lawsuit to this court. (ECF No. 1.) In his *pro se* Complaint, Moon pleads: (1) a wrongful termination claim under Ohio law; and (2) a Title VII race discrimination claim. (*Id*.) On January 12, 2011, Alcoa filed its Motion for Summary Judgment. (ECF No. 17.) Moon has not filed a response to Alcoa's Motion.

---

[1]

The Agreement states that "all requests for hearing [regarding a grievance] shall be granted as soon as possible and in no event later than the following . . . . : First Step, two (2) days on which the grieving employee works after the grievance is first presented. Second Step, three (3) days, on which the grieving employee works after appeal of the grievance from first step." (ECF No. 17, Ex. 2, p. 9; Agreement, p. 11.)

## II. STANDARD OF REVIEW

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999). The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the nonmoving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*. The court must construe *pro se* complaints liberally. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010).

### III. LEGAL ANALYSIS

A. Wrongful Discharge Claim

In its motion for summary judgment, Alcoa argues that Moon's wrongful termination claim fails, as a matter of law, because Moon's claim is preempted by § 301 of the Labor-Management Relations Act ("LMRA" or "§ 301"), 29 U.S.C. § 185(a).[2]

In his Complaint, Moon did not plead the specific law that supports his wrongful termination claim. He did assert that Alcoa did not follow "State Labor Laws" when it terminated his employment and that his termination was similar to the wrongful termination in a case he cites as "Rulon Miller v. IBM (1984)". (ECF No. 1, Ex. A, p. 3 (citing *Rulon-Miller v. Int'l Bus. Mach. Corp.*, 162 Cal. App.3d 241 (Cal.App. 1 Dist.1984) *overruled on other grounds* by *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 714 (Sup. Ct. Cal. 1988)).) In *Rulon*, the court determined that although the defendant could fire the plaintiff because she was an at-will employee, the defendant had a common law duty of good faith and fair dealing toward the plaintiff, arising out of the employment agreement. *Id.* at 247-48. Although, as a California court of appeals decision, *Rulon* does not control this case, it is clear that any wrongful termination case under state law would require interpretation of the Agreement.

Alcoa contends that Moon's wrongful termination claim is preempted by § 301 of the LMRA. The LMRA governs lawsuits for violation of collective bargaining agreements between employers and labor organizations representing employees. Section 301 provides: "[s]uits for violation of

---

[2] Alcoa also challenges Moon's state-law claim if based on the theory of wrongful termination against public policy. The court need not address this argument because the court has determined that Moon's wrongful termination claim is preempted by the LMRA.

contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Because in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules, *Teamster v. Lucas Co.*, 369 U.S. 95, 104 (1962) (quotation marks omitted), the LMRA preempts state-law claims arising out of employer-labor organization agreement disputes. *See Mattis v. Massman*, 355 F.3d 902, 905 (6th Cir. 2004). Preemption exists if the state-law rights or obligations at issue "do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1988). A claim is preempted by the LMRA if the claim "is inextricably intertwined with consideration of the terms of the labor contract." *Id.* A state law claim may survive § 301 preemption if it does not require interpretation of the terms of the collective bargaining agreement, and if the rights at issue are created by state law and not the agreement. *Mattis*, 355 F.3d at 906.

Here, Alcoa's security guards and sergeants were members of the SPFPA and its Local No. 1050 Union. (See ECF No. 17, Ex. 1, p. 7.) SPFPA and Alcoa entered into a collective bargaining agreement that governed wages, hours, working conditions, and provided procedures for grievances. (*Id.* at p. 8.) In this Agreement, Alcoa recognized the SPFPA as the "exclusive collective bargaining agency" for the security guards and sergeants. (*Id.*)

Alcoa argues that Moon's wrongful termination claim is "inextricably intertwined" with the Agreement because "Moon's claim cannot be resolved without interpreting the bargaining agreement to determine whether it provides justification for his discharge." (ECF No. 17, p. 12.) Within Moon's grievance to Alcoa about his wrongful termination claim, he states that Alcoa does

- 6 -

not refer to an article or code violation to justify his termination. (ECF No. 17, Ex. 11.) Article VI of the Agreement, "Disciplinary Action", governs dismissals, suspensions, discharges and disciplinary layoffs. (ECF No. 17, Ex. 1, p. 10.) Article VI implements procedures to carry out disciplinary actions and provides restitutions of pay for time lost by the employee if it has been determined that the disciplinary action was "not for proper cause." (*Id.*) Moon's claim may fall under Article VI because Alcoa terminated Moon for his convictions that were deemed "inconsistent with the role and expectations of an Alcoa Security Officer." (ECF No. 17, Ex. 10.) The court would need to interpret the terms of Article VI, and the Agreement in general, to determine whether Alcoa was authorized and justified in terminating Moon's employment. Further, the court would need to look to the Agreement in regard to Moon's request for restitution (*see* ECF No. 1, Ex. A), because Article VI requires restitution for wrongful discharge. Alcoa has met its burden of showing that Moon's claim is "inextricably intertwined" with the Agreement to raise the LMRA preemption.

It is therefore incumbent upon Moon to present evidence to show that there is a genuine issue regarding whether his claim survives the LMRA preemption. Moon has not shown that his claim is so "independent" from the Agreement, that this court would not need to look at its terms to determine his claim. *See Mattis*, 355 F.3d at 906 ("[R]esolution of the state-law claim does not require construing the collective bargaining agreement." (quoting *Allis-Chalmers*, 486 U.S. at 407) (internal quotation marks omitted). Because Moon has not shown that his termination is "entirely divorced from conduct authorized or even contemplated by" the agreement, *see DiPuccio v. United Parcel Serv.*, 890 F. Supp. 688, 690 (N.D. Ohio 1995), Moon's state-law claim is preempted and

thus, dismissed.[3]

### B. Discrimination Claim

Alcoa argues that this claim should be dismissed because Moon has not shown a prima face case of race discrimination. (ECF No. 17.) Alcoa states that it had a legitimate, non-discriminatory reason for terminating Moon's employment: "[H]is convictions for Attempted Receipt of Stolen Property and Attempted Sexual Imposition of a Minor were inconsistent with the role and expectations of an Alcoa Security Officer." (*Id.*)

Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), prohibits an employer from "discharg[ing] any individual, or otherwise [ ] discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

To show race discrimination, the plaintiff must proffer either direct or circumstantial evidence of that discrimination. *Ross v. Pfizer*, 375 Fed. Appx. 450, 453 (6th Cir. 2010). Direct evidence is evidence that "proves the existence of a fact without requiring any inference," *Grizzell v. City of Columbus*, 461 F.3d 711, 719 (6th Cir. 2006), and " if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Circumstantial

---

[3]

Moon did not plead an LMRA claim in his Complaint. (ECF No 1.) Even if Moon had, his claim would be time-barred by § 301's six-month statute of limitations. *See DelCostello v. International Bhd. Of Teamsters*, 462 U.S. 151 (1983); *see also, DiPuccio*, 890 F. Supp. at 690.

evidence is analyzed under the *McDonnell-Douglas* framework. *Ross*, 375 Fed. Appx. at 453. Under this framework, the plaintiff has the initial burden to demonstrate a prima facie case of racial discrimination. *Chen v. Dow Chem. Co,*. 580 F. 3d 394, 400 (6th Cir. 2009). If the plaintiff meets his burden, the employer must offer a legitimate, non-discriminatory explanation for its conduct. *Id*. If the employer provides such an explanation, the burden shifts to the plaintiff to show pretext – "that the employer's explanation was fabricated to conceal an illegal motive." *Id*. To establish a prima facie case of discrimination, the plaintiff must demonstrate: "(1) that he is a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that a similarly-situated employee outside the protected class or classes was treated more favorable than he." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010).

(i) Direct Evidence

Alcoa contends that Moon has offered no direct evidence of race discrimination. In his Complaint, Moon asserts that Alcoa violated Title VII because Alcoa terminated him, an African American, for his convictions, while employing Kenneth Ambrose, a white employee who was convicted of domestic violence. (ECF N o. 1, Ex. A p. 14.) In his deposition Moon stated that Alcoa also continued the employment of two other employees, Wayne Hurst and George Strayhorn, whose off-duty conduct, Moon believed, were grounds for termination. (ECF No. 17, Ex. 5, pp. 130-132.) Moon claims that Alcoa gave preferential treatment to Ambrose because it did not investigate Ambrose's legal matters and it allowed Ambrose to take 23 days of vacation while he was serving his sentence for the conviction. (ECF No. 1, Ex. A.) Yet these allegations, alone, are not direct evidence of race discrimination against Moon. To find race discrimination from the disparate treatment between Moon and Ambrose, a jury would have to *infer* racial animus as a motivation

behind such treatment. *See Grizzell*, 461 F.3d at 719 (emphasis in the original). Thus, the court finds that Moon has not presented any direct evidence of race discrimination to support his claim. *Compare Ross v. Pfizer, Inc.*, 375 Fed. Appx. 450, 454 (6th Cir. 2010) (finding that an employer's use of the word "monkey" toward an African American employee was not direct evidence of racial discrimination, when "monkey" was used in the context of the monkey-on-the-back idiom); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) ("[A] facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent.").

### (ii) Circumstantial Evidence

Alcoa argues that Moon has not shown two of the four requirements for a prima facie case of racial discrimination based on circumstantial evidence: (a) that he was qualified to be a security sergeant; and (b) that a similarly-situated employee outside the protected class or classes was treated more favorable than he. (ECF No. 17.) *See Younis*, 610 F.3d at 363.

### (a) Qualified to be a Security Sergeant

Alcoa first argues that Moon is not qualified to a security sergeant. Moon has worked as a security guard for Alcoa since June 11, 2001. Before his employment with Alcoa, Moon worked as a security guard for Progressive Insurance. (ECF No. 1.) Moon has also taken 120 hours of law enforcement training. (ECF No. 17, Ex. 2, p. 26.) Alcoa contends that his two convictions of attempted receipt of stolen property and attempted sexual imposition of a minor make Moon unqualified for his position. (ECF No. 17, p 15.) Alcoa highlights the fact that Moon committed his theft crime while working as a security guard at his previous employer. Alcoa also believes that his sexual imposition crime calls into question his ability to ensure the protection of Alcoa's

employees. (*Id*. at 21.) While these facts raise serious issues regarding Plaintiff's qualifications to be a security guard, there are other facts in the record, such as he having worked in that capacity with Defendant and at least one other employee, that raises a genuine issue of material fact regarding his qualifications. Thus, this aspect of Defendant's Motion is not well-taken.

(b) Preferential Treatment Of Similarly-Situated Employees Outside of Protected Class

Next, Alcoa argues that Moon has not shown that similarly-situated employees outside of his protected class were treated more favorably than he. Moon argues that Ambrose was a similarly-situated employee because Ambrose was also convicted of a crime and because they were both under the "same contract" but not the same "code of conduct". (ECF No. 17, Ex. 2, p. 121-23.) Moon admits that as a security guard, he had different responsibilities than Ambrose, who was a millwright. (*Id*. at 33.)  Further, Moon argues that Hurst was similarly situated because he believed Hurst was convicted of a felony, and knew that Hurst had a problem with alcohol. (*Id*. at 34.)  Moon states that he believed that Hurst only got suspended for his conduct, and that if he had committed the same actions as Hurst he would have been fired. (*Id*. at 35.)   Finally, Moon argues that Strayhorn was similarly situated because Strayhorn was convicted of domestic violence, but was allowed to come back to work after serving six months in prison. (*Id*. at 36.)

To satisfy the "similarly-situated employee" requirement, Moon must show that the alleged similarly-situated employees, here Ambrose, Hurst, and Strayhorn, are similar "in all *relevant* aspects." *Erchegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (internal quotation marks omitted) (emphasis in the original).  For this analysis, the court will consider whether Moon and the three named employees: "(1) share the same supervisor; (2) are subject to the same standards; and (3) have engaged in the same conduct without differentiating or mitigating

- 11 -

circumstances that would distinguish their conduct or the employer's treatment of them for it." *Barry v. Noble Metal Processing, Inc.*, 276 Fed. Appx. 477, 480-81 (6th Cir. 2008) (quoting *Ercegovich*, 154 F.3d at 352) (internal quotation marks omitted). Here, Moon was a security sergeant, was subject to the Code of Conduct and the Agreement, and was discharged because he had been convicted of two crimes, one of which occurred during his employment as an Alcoa security guard.

First, the court notes that Strayborn is an African American, and thus Moon cannot argue that any disparate treatment between him and Strayhorn was on account of race. Second, none of the named employees worked as security guards for Alcoa. Ambrose was employed as an hourly millwright, Hurst was employed as an hourly electrician, and Strayhorn was an hourly production employee. Thus, all three employees had different employment responsibilities than Moon; significantly, none of these employees were in charge of the safety of Alcoa's facility and employees. This distinction is important because Alcoa's asserted reason for terminating Moon was due to the important security responsibilities he provided the company. Third, and relatedly, because the three employees held different positions than Moon, they did not share the same supervisor as Moon. Fourth, while the three employees may have broadly engaged in similar conduct as Moon – actions that are subject to criminal punishment – they are not similarly situated in all relevant aspects. Thus, the court finds that Alcoa has shown that Moon's Title VII race discrimination claim fails as a matter of law. Moon has not presented evidence sufficient to raise a genuine issue of material fact that should be decided by the trier of fact. Thus, judgment must be rendered for Alcoa as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the court grants Alcoa's Motion for Summary Judgment (ECF No. 17), hereby rendering judgment in its favor and against Moon on his wrongful termination under Ohio law and Title VII race discrimination claim.

IT IS SO ORDERED.

/s/*SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

May 31, 2011